UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JOEY DEAN NIPPER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-453-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, | ) | **&** |
| Acting Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Joey Dean Nipper seeks judicial review of the Commissioner of Social Security's decision to deny his application for disability insurance benefits. For the reasons explained below, the Court will DENY Nipper's Motion for Summary Judgment [R. 12] and GRANT the Commissioner's. [R. 14.]

**I**

Nipper filed an application for disability insurance benefits ("DIB") with the Social Security Administration ("SSA") on February 27, 2012. [R. 12-1 at 2.] He argues that he is unable to work due to an assortment of mental and physical disabilities. [TR. 20.] The SSA denied his application on December 8, 2012 [Tr. 14], and then denied his request for reconsideration on February 11, 2013. [*Id.*] Nipper later requested a video hearing with an Administrative Law Judge ("ALJ"), which the parties held on May 22, 2014. [*Id.*]

In evaluating Nipper's disability claim, the ALJ conducted the standard sequential analysis required under 20 C.F.R. § 416.920.[1] This evaluation includes five steps. First, if a

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 416.920(a)(4)(iii).  Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual.  *See* 20 C.F.R. § 404.1545.  Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work.  If a claimant's impairments do not prevent him from doing this work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  Fifth, if a claimant's impairments—considering his RFC, age, education, and past work—prevent him from doing other work that exists in the national economy, he is disabled.  20 C.F.R. § 416.920(a)(4)(v).

In this case, at Step 1, the ALJ found that Nipper had not engaged in substantial gainful activity since February 1, 2012.  [Tr. 16.]  At Step 2, the ALJ determined that Nipper has a few severe mental impairments, including certain affective disorders and anxiety disorders, and some

---

To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520.  Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

physical impairments that are not severe. [Tr. 16-18.] At Step 3, the ALJ found that Nipper does "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairment in 20 C.F.R. Part 404, Subpart. P, Appendix 1," including Listings 12.04 and 12.06. [Tr. 18-19] After considering the entire record, the ALJ then determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [Tr. 21.] The ALJ also found that Nipper has "the residual functioning capacity to perform a full range of work at all exertional levels," subject to the following nonexertional limitations: he "is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any work place changes," and he "should have only occasional interaction with the general public, only occasional interaction with coworkers and only occasional supervision." [Tr. 20.]

At Steps 4 and 5, the ALJ concluded there are "jobs that exist in significant numbers in the national economy that [he] can perform." [Tr. 23.] The ALJ's vocational expert testified that, despite his limitations, Nipper would still "be able to perform the requirements of representative unskilled" occupations such as hand packager at the medium exertional level, final inspector at the light exertional level, and end band cutter at the sedentary exertional level. Accordingly, the ALJ concluded that Nipper is not "disabled" within the meaning of Section 223(d) of the Social Security Act. [Tr. 24.] The Appeals Council upheld the ALJ's decision on November 6, 2014. [Tr. 5.] Having exhausted his administrative remedies, Nipper now seeks judicial review of the Commissioner's final decision.

## II

### A

In reviewing an ALJ's decision to deny Social Security benefits, courts must determine whether there is substantial evidence in the record to support the Commissioner's judgment. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). To find "substantial evidence," courts must perceive "more than a scintilla of evidence but less than a preponderance," which is to say that a court need only find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotations omitted) (citation omitted).

When searching the record for such evidence, courts must examine the record as a whole. *Cutlip, 25 F.3d at 286* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This examination, however, is limited "to the particular points that [the claimant] appears to raise in her brief on appeal." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Courts are not empowered to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if the reviewing court would decide the matter differently, and even if substantial evidence also

supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

**B**

Nipper challenges the ALJ's findings on four grounds. First, Nipper faults the ALJ for determining that his physical limitations are not severe because he can "perform a full range of work at all exertional levels." [R. 12-1 at 10.] This argument ignores the fact that the ALJ did classify Nipper's *mental* impairments as severe. Step 2 merely requires the presence of *some* severe disability before proceeding to the next step; after step 2, the ALJ determines the petitioner's RFC by considering both his severe and non-severe conditions. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'"). And that is precisely what the ALJ did here, recognizing that his RFC evaluation required him to "consider all of the claimant's impairments, including impairments that are not severe." [Tr. 15.] Because the ALJ's step 2 analysis did not preclude a later consideration of Nipper's physical limitations, Nipper's challenge to this finding is legally irrelelvant. *See, e.g., Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that [the plainitff] had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."); *Maziarz v. Sec. of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's [limitation] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's [limitation] constituted a severe impairment could not constitute reversible error.").

Even accepting that Nipper's challenge to the step 2 determination also implicates the ALJ's later findings, Nipper's arguments still fail. He argues, for example, that "[t]he ALJ based this finding on state agency physicians, instead of the medical records of evidence." [*Id.*] He suggests that the evaluation of Dr. Wilson, a "one-time state agency examiner," is "not based upon diagnostic or objective evidence" and is "inconsistent with the findings in the medical records as well as Mr. Nipper's testimony." [R. 12-1 at 9.] Unfortunately, Nipper does not explain what information in these medical records he finds "inconsistent" with Dr. Wilson's evaluation, nor does he otherwise cite any portion of the 1,000-page administrative transcript to support this claim.[2] Such conclusory arguments do not provide adequate grounds for appealing an ALJ's decision. *See Hollon ex rel. Hollon v. Commr. of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e decline to formulate arguments on [the claimaint's] behalf, or to undertake an open-ended review of the entirety of the administrative record [to determine] (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence."); *Hicks v. Astrue*, 2010 WL 399099, at *3 (E.D. Ky. Jan. 26, 2010) (warning that the court is inclined to dismiss claims that "merely provid[e] . . . conclusory statements that the ALJ's findings are incorrect and claim that as a result he is entitled to disability benefits"). In any case, the record plainly shows that Dr. Wilson did base her evaluation on "diagnostic and objective evidence"—she extensively interviewed Nipper and performed a comprehensive physical exam, including assessments of his respiratory, cardiovascular, gastrointestinal, musculoskeletal, and neurological health. [Tr. 375.] And she expressly reached her ultimate conclusion "[b]ased on [that] examination and the objective evidence." [Tr. 376.]

---

[2] The Court notes that Nipper habitually fails to support his arguments and fact statements with citations to the administrative transcript.

Relatedly, Nipper also disputes the weight given to Dr. Mukeherjee's physical evaluation because Mukherjee only reviewed Nipper's medical records up to February 8, 2013, and additional records were added after that date. [R. 12-1 at 10.] If the ALJ had based his determination exclusively or principally on Dr. Mukeherjee's evaluation, the Court might find that this conclusion was not supported by substantial evidence. But the ALJ based his findings on far more than Dr. Mukherjee's assessment—he also relied upon the comprehensive physical evaluation of Dr. Wilson, the numerous medical records indicating that Nipper showed no significant physical limitations and "full range of motion and full strength" in his shoulder, and the conclusion of his primary care physician, Dr. Santos, that "physical disability . . . is not [Nipper's] problem." [Tr. 18.] Thus, even if Dr. Mukeherjee's assessment should be given less weight than the conclusions of other medical professionals, the ALJ's findings were still supported by substantial evidence. *See Kidd v. Astrue*, 2010 WL 4512822, at *5 (E.D. Ky. Nov. 2, 2010) (distinguishing facts from a case where "[t]he sole evidence before the ALJ refuting [claimant's] claims of disabling pain and illness . . . was an incomplete medical history and an expert opinion rendered from it," and noting "[h]ere, the ALJ relied upon other sources of evidence in reaching his conclusion.") (quoting *Pratts v. Chatter,* 94 F.3d 34, 38 (2d Cir. 1996)).

The Court adds, too, that the ALJ reasonably granted significant weight to the assessments of these state agency physicians. Although agency evaluators often do not have the benefit of examining patients over an extended period, they are nevertheless experts in the field to whom the ALJ may appropriately afford great weight. In *Lee v. Commr. of Soc. Sec.*, 529 Fed. Appx. 706 (6th Cir. 2013), for example, the Sixth Circuit rejected the plaintiff's challenge to "the weight the ALJ gave to the [state agency] psychological consultants' assessments," noting that the plaintiff did "not offer statements from her treating sources to rebut those

assessments by indicating marked or extreme limitations in the relevant categories." *Id.* at 712. The court also cited 20 C.F.R. § 404.1527(e)(2)(i) for the recognition that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation," and whose findings and opinions the ALJ "must consider . . . as opinion evidence." *Id.*

Here, the only other evaluation cited by Nipper is that of his treating physician, Dr. Santos. Nipper suggests that the ALJ disregarded Santos's observation that Nipper has "some mild limitations in physical ability due to shoulder pain and back pain." [Tr. 958.] But Santos also stated that physical disability is "not [Nipper's] problem," and instead "the problem is emotional/psychological that keeps him from being able to work." [Tr. 958.] This finding is entirely consistent with the ALJ's conclusion that "none of the claimant's physical conditions has more than minimally impacted basic physical work activities during this period." [Tr. 18.] The ALJ's findings were thus supported by substantial evidence, even assuming that his analysis of Nipper's physical condition at step 2 carries some legal relevance.

Second, Nipper claims that the ALJ "failed to include the limitations" that Dr. King recognized in her assessment of his "capacity to tolerate stress and respond appropriately to supervisors and coworkers." [R. 12-1 at 11.] Dr. King stated that Nipper's "ability to tolerate stress and the pressure of day-to-day employment appears marked." [Tr. 372.] The ALJ, recognizing the awkwardness of this phrasing, opined that "Dr. King may have intended to state that the claimant had marked impairment but did not do so." [Tr. 22.] The ALJ added that, in any event, "her findings would not support marked impairment of these abilities." [*Id.*] Nipper argues, again without citation to the administrative transcript, that "Dr. King did in fact state that Mr. Nipper has marked impairments in her report," and "[f]or the ALJ to assume Dr. King's

8

intentions is error." [R. 12-1 at 11.] Nipper has it backwards. The disputed langauge stated that Nipper had a marked *ability* to tolerate stress, but the ALJ—in an effort to "assume Dr. King's intentions"—guessed that the doctor had intended to say this ability was markedly impaired. If Nipper believes that one should not "assume Dr. King's intentions," he must also conclude that Dr. King found his "ability to tolerate stress and the pressure of day-to-day employment appears marked." [Tr. 372.] And even if the Court were to commit the "error" of assuming that Dr. King intended to describe these limitations as marked, the ALJ's contrary finding was supported by substantial evidence. In her RFC assessment, Dr. Mary K. Thompson, a state agency psychologist, found that Nipper was "not significantly limited" in his "ability to perform activities within a schedule," to "work in coordination with or in proximity to others," or to "complete a normal workday and workweek without interruptions . . . and to perform at a consistent pace without an unreasonable number and length of rest periods." [Tr. 99-100.] Dr. Ilze Sillers, another state agency psychologist, made identical findings. [Tr. 81.] As stated above, "[s]tate agency medical and psychological consultants . . . are highly qualified physicians [and] psychologists . . . who are also experts in Social Security disability evaluation." *Lee*, 529 Fed. Appx. at 712.

     Nipper believes that the ALJ should have given more weight to the opinion of Dr. Leigh Ford than to the evaluations of these agency psychologists. Dr. Ford suggested that Nipper had a poor ability to deal with co-workers, interact with the public, handle work stress and maintain concentration. [Tr. 537.] The ALJ gave "little weight" to this report, noting that Nipper hired Ford for the purposes of the evaluation, that Ford provided her assessment using form language provided by Nipper, and that she based her judgment "primarily upon the claimaint's allegations with no indication that she had reviewed any medical records." [Tr. 22.] This credibility

9

determination, coupled with the findings of two agency experts, is consistent with the ALJ's conclusion that Nipper "is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any work place changes," and "should have only occasional interaction with the general public, only occasional interaction with coworkers and only occasional supervision." [Tr. 20.] Although Nipper may wish the ALJ had weighed these evaluations differently, it is not the Court's prerogative to resolve conflicts in evidence or second-guess the ALJ's carefully considered credibility determinations. *See Ulman*, 693 F.3d at 713; *see also Bradley*, 862 F.2d at 1228. It is enough to say that, in view of the facts cited above, the ALJ's findings were supported by substantial evidence.

Third, Nipper argues that "[t]he ALJ failed to consider, acknowledge, and assess weight to the medical opinion of Dr. Ilze Sillers." [R. 12-1 at 12.] But Nipper does not explain how Dr. Sillers' opinion would support any of his claims. Instead, Nipper merely points out that Dr. Sillers determined "Mr. Nipper has moderate limitations in concentration, persistence, or pace." [*Id.*] That might be relevant, if not for the fact that Dr. King, Dr. Thompson, and the ALJ himself also concluded that Nipper has moderate limitations in these categories. [Tr. 22, 99-100, 372.] At best, an explict acknowledgment of this evaluation would have only provided further support for the ALJ's existing determination. And as noted above, other aspects of Dr. Sillers' evaluation—like Dr. Thompson's identical assessment—actually undermine many of Nipper's central allegations, suggesting that he is "not significantly limited" in several skill categories critical to Nipper's claims. [Tr. 81.] In the absence of any indication that an express recognition of Sillers' evaluation would have aided Nipper's petition, the Court finds little cause to remand the case on this basis. *See Pasco v. Commr. of Soc. Sec.,* 137 Fed. Appx. 828, 839-40 (6th Cir.

2005) (rejecting appellant's claim that an "ALJ erred by failing to mention" multiple physicians' reports, and noting claimant did not "specify how these sources support her claim for benefits or weigh against the ALJ's denial of benefits.").

Fourth and finally, Nipper insists that the ALJ found he "was moderately limited in concentration, persistence, or pace, [but] failed to include any limitations for this impairment in the RFC." [R. 12-1 at 12.] Once again, Nipper fails to cite any portion of the administrative transcript to support this conclusory allegation. Such a half-hearted claim flirts with waiver. *See Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) (finding issues presented in a perfunctory manner with no effort at developed argumentation are deemed waived). In any case, a review of the ALJ's report shows that he did in fact include these limitations in his RFC. Nipper apparently believes that, unless the ALJ recited the precise language cited above—stating that Nipper is "moderately limited in concentration, persistence, or pace"—the Court must find that he failed to recognize these limitations in his report. That is not the rule. Instead, the ALJ's task is to translate this formal language into an accurate real-world assessment of Nipper's ability to work. *See Howard v. Commr. of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (holding claimant's RFC should be "an assessment of what [he] can and cannot do, not what [he] does and does not suffer from."). And the SSA's policy manual expressly states that, in crafting an RFC assessment, ALJs should not include any "nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations" because "[s]uch terms do not describe function and do not usefully convey the extent of [a] capacity limitation." POMS DI 24510.065.B.1.

The ALJ's assessment followed these instructions. Rather than simply state that Nipper is "moderately limited in concentration, persistence, or pace," the ALJ clarified that Nipper "is

limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any work place changes," and that he should have "only occasional interaction with the general public, and only occasional interaction with coworkers and only occasional supervision." [Tr. 20.] This language directly tracks the limitations cited by Nipper, but does so by illustrating what he "can and cannot do, not what [he] does and does not suffer from." *Howard*, 276 F.3d at 239.[3] And as the record amply demonstrates, substantial evidence supported the ALJ's determination that Nipper is moderately limited in these categories. [Tr. 81, 99-100, 372.]

### III

As previously stated, this Court must limit its inquiry to the question of whether the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 241). This is true even if the Court would decide the issue differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass*, 499 F.3d at 509. In light of the evidence outlined above, the Court finds that substantial evidence supports the ALJ's finding. Accordingly, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** as follows:

    1.      Nipper's Motion for Summary Judgment [**R. 12**] is **DENIED**;

---

[3] Another case of this Circuit, *Ealy v. Commr. of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), provides useful insight here. In *Ealy*, a physician concluded that the claimant could only conduct simple, repetitive tasks in an environment "where speed was not critical." *Id.* at 516. Nevertheless, in his hypothetical question, the ALJ only stated that the claimant was "limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* The court found reversible error because "[t]he ALJ's streamlined hypothetical omitted these speed- and pace-based restrictions completely." *Id.* Here, by contrast, the ALJ explicitly incorporated the speed- and pace-based restrictions into his assessment, finding that Nipper "is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple, work-related decisions with few, if any work place changes." [Tr. 20.]

2. The Commissioner's Motion for Summary Judgment [**R. 14**] is **GRANTED**;

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This 31st day of March, 2016.

Gregory F. Van Tatenhove
United States District Judge